**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shamika Lang, | No. CV-21-01955-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

This is a Social Security appeal. On March 1, 2022, the Court referred the matter to Magistrate Judge Metcalf for the preparation of a report and recommendation ("R&R") as to the final disposition. (Doc. 16.) On January 30, 2023, Judge Metcalf issued a detailed 32-page R&R concluding that the ALJ's decision should be affirmed. (Doc. 27.) Afterward, Plaintiff filed objections to the R&R and the Commissioner filed a response. (Docs. 28, 29.) For the following reasons, Plaintiff's objections are overruled, the R&R is adopted, and the ALJ's decision is affirmed.

**DISCUSSION**

I.  Legal Standard

Under 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to . . . submit to a judge of the court proposed findings of fact and recommendations for the disposition" of a dispositive matter. *Id.*

"Within fourteen days after being served with a copy [of the R&R], any party may serve and file written objections . . . as provided by rules of court. A judge of the court

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* § 636(b)(1). *See also* Fed. R. Civ. P. 72(b)(2)-(3) (same).

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").

II. Analysis

 A. **Symptom Testimony**

The first assignment of error in Plaintiff's opening brief is that the ALJ erred when discrediting her symptom testimony. (Doc. 21 at 1, 11-22.)

The R&R recommends that this challenge be rejected. (Doc. 27 at 4-27.) Although the R&R acknowledges that several of the ALJ's proffered reasons for discrediting Plaintiff's symptom testimony were flawed, it concludes that any error was harmless because "the remaining reasons offered by the ALJ (e.g. imaging showing limited impairment, limited treatment, failure to report self-treatment, etc.) were clear and convincing reasons for rejecting her testimony on these impairments, and were supported

by substantial evidence." (*Id.* at 27.)

As an initial matter, the Court agrees with the R&R's statement that if some of the ALJ's proffered reasons for rejecting Plaintiff's symptom testimony were valid under Ninth Circuit law and supported by substantial evidence, any error in the ALJ's other reasons for rejecting Plaintiff's symptom testimony was harmless. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above."). Thus, the Court turns to the subset of rationales that were deemed valid in the R&R.

### 1. Inconsistency With Imaging/Medical Records

One of the ALJ's reasons for discrediting Plaintiff's symptom testimony was that her alleged musculoskeletal symptoms were inconsistent with the evidence in the record that generally showed only minor physical abnormalities on imaging. (AR at 31-34.) Such inconsistency can serve as a permissible reason for discrediting a claimant's symptom testimony under Ninth Circuit law, at least if combined with other valid reasons. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that

in many cases."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

In her opening brief, Plaintiff challenged this rationale on the grounds that the ALJ cherry-picked the evidence, failed to explain "how any of the negative findings the ALJ highlighted in [Plaintiff's] records was a basis to impugn the severity of [Plaintiff's] symptom testimony," and "[a]s for [Plaintiff's] lower extremity radiculopathy, the ALJ cited to several treatment records that are well outside the relevant period, rendering those citations unhelpful in supporting the ALJ's belief that the medical evidence during the relevant period was inconsistent with [Plaintiff's] symptom testimony." (Doc. 21 at 18-19.) The R&R concludes these challenges are unavailing—among other things, the R&R notes that the ALJ expressly compared Plaintiff's pre- and post-onset lumbar and lower extremity radiculopathy imaging records, "went on to explain why these more recent records did not alter his conclusions," and explained why the "post-onset records . . . [were] inconsistent with Plaintiff's statements of disabling impairment." (Doc. 27 at 20-21.)

In her objections, Plaintiff does not appear to address (let alone challenge) the specific portion of the R&R containing this analysis, which means that any challenge to this portion of the R&R is forfeited. *Thomas*, 474 U.S. at 149-50. At any rate, the Court would adopt this well-reasoned portion of the R&R even if an objection had been raised.

2. <u>Failure to Follow Treatment Recommendations</u>

Another of the ALJ's reasons for discrediting Plaintiff's symptom testimony was that she only pursued limited treatment for her musculoskeletal symptoms and failed to complete several recommended courses of treatment. (AR at 33-34 [noting that Dr. Manganelli "ordered up a functional capacity assessment" and then wrote that Plaintiff "[d]id not get a functional capacity assessment" and that a different medical provider "report[ed] that [Plaintiff] 'has not been diligent in performing a home exercise program'"].) This, too, is a permissible basis for discrediting a claimant's symptom

testimony under Ninth Circuit law. *See, e.g., Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (affirming ALJ's rejection of symptom testimony in part because "Chaudhry repeatedly failed to seek treatment . . . or follow prescribed courses of treatment"); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (concluding that "[t]he ALJ provided clear and convincing reasons for rejecting Greger's testimony" where one of the ALJ's proffered reasons was that "there was no evidence that Greger participated in a planned cardiac rehabilitation program").

In her opening brief, Plaintiff failed to address this portion of the ALJ's analysis. (Doc. 21.) In the answering brief, the Commissioner pointed out this omission and identified the failure to followed prescribed courses of treatment as one of the reasons why the ALJ's decision should be affirmed. (Doc. 25 at 13.) Nevertheless, Plaintiff still did not address this issue in her reply brief. (Doc. 26.) Accordingly, the R&R concludes that this portion of the ALJ's analysis should be affirmed, both based on waiver/forfeiture principles and on the merits: "'[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment' can be a clear and convincing reason to reject symptoms testimony. Plaintiff offers no explanation or reason for her failure to pursue the functional capacity assessment or follow the prescribed exercise program, nor why they were not clear and convincing reasons to reject her symptoms testimony." (Doc. 27 at 23-24, citations omitted.)

In her objections, Plaintiff addresses this issue for the first time: "The ALJ did not explicitly state that [failure to follow treatment recommendations] was a reason to reject [her] symptom testimony, and it is clear from the ALJ decision that this was merely an observation the ALJ made about [Plaintiff's] treatment within a litany of other statements. The R&R's argument that the ALJ did so is improper *post hoc* rationale. An established principle of judicial review is that a reviewing court may not affirm based on facts or

rationale upon which the agency did not rely. Further, [Plaintiff] was not asked about these issues at the hearing, and without an opportunity to explain a failure to comply with recommended treatment, this is not a specific, clear, and convincing reason to reject [Plaintiff's] symptom testimony." (Doc. 28 at 6-7, citations omitted.) In response, the Commissioner argues that Plaintiff forfeited the issue by not raising it in her opening brief, and alternatively that the objection fails on the merits because (1) "contrary to Plaintiff's argument that both the Commissioner and Magistrate Judge Metcalf engaged in post-hoc rationalization, the ALJ's cited statements about Plaintiff's limited spinal/musculoskeletal treatment ended with the conclusion that such medical evidence 'does not support a finding of disability'"; and (2) "there 'is no merit in [Plaintiff's] contention that the ALJ should have given her a chance, while at the hearing, to explain the inconsistent statements and other factors that led him to find her not credible' . . . . [T]he ALJ noted that Plaintiff's limited pursuit of recommended treatment did not prevent her from being 'quite stable' for long periods. When the ALJ asked Plaintiff about her treatment for spinal/musculoskeletal pain, Plaintiff affirmed that she took medication 'as needed' about four times a week, which 'resolve[d]' her pain symptoms. Plaintiff's stability undermined her testimony because of the implication that stemmed from her limited yet beneficial treatment." (Doc. 29 at 5-6, citations omitted.)

The Commissioner has the better of these arguments. First, Plaintiff waived any challenge to the ALJ's "failure to follow treatment recommendations" rationale by failing to raise such a challenge in her opening brief. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001); *Warre v. Comm'r of Soc. Sec. Admin,*, 439 F.3d 1001, 1007 (9th Cir. 2006) ("Although Plaintiff made that argument to the Commissioner, she did not raise it before the district court. Accordingly, this issue is waived, and we do not consider it."). In a related vein, a party generally may not raise new arguments for the first time in an objection to an R&R. *Martin v. Barnes*, 2015 WL 3561554, *1 (C.D. Cal. 2015) ("This Court, in its discretion, has declined to consider new evidence and arguments which petitioner seeks to present for the first time in his objections. Indeed, new arguments and factual assertions

. . . raised for the first time in objections to the report and recommendation . . . may not be deemed objections at all. The only proper purpose of an objection to an R & R is to identify a specific defect of law, fact, or logic in the Magistrate Judge's analysis. . . . An R & R cannot have analyzed an argument or evidence which the objecting party failed to present prior to its issuance, so a Report's 'failure' to address such arguments or evidence cannot be a defect.") (cleaned up).[1]

Second, and alternatively, the objection fails on the merits. The ALJ adequately described why Plaintiff's failure to follow treatment recommendations undermined Plaintiff's symptom testimony and credibility. As noted, this is a permissible basis for discrediting symptom testimony under Ninth Circuit law. *Chaudry*, 688 F.3d at 672; *Orn*, 495 F.3d at 638; *Greger*, 464 F.3d at 972. Also, contrary to Plaintiff's burden-shifting argument, it was Plaintiff's responsibility to provide an explanation for her non-compliance, which she failed to do. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[T]here must . . . be some types of evidence capable of being introduced at a hearing on which an ALJ can rely to find a pain allegation incredible. . . . [One] such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, *a claimant's failure to assert one*, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.") (citations omitted and emphasis added). Even if a different factfinder could have concluded, based on the totality of Plaintiff's treatment history, that the cited instances of non-compliance did not undermine Plaintiff's credibility, it was rational for the ALJ to reach a different conclusion here and find that the episodes were discrediting. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

---

[1] The Court recognizes that it has discretion to consider new arguments raised for the first time in response to an R&R. *Brown v. Roe*, 279 F.3d 742 (9th Cir. 2002). Nevertheless, the Court declines in its discretion to allow Plaintiff to do so here, where Plaintiff was represented by counsel, had a full and fair opportunity to address the failure-to-follow-treatment-recommendations issue in her opening brief, and again failed to address the issue in her reply brief even after it was raised in the answering brief.

- 7 -

decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

                3.        <u>Failure To Disclose Relief From Particular Course Of Treatment</u>

Yet another of the ALJ's reasons for discrediting Plaintiff's symptom testimony was that she failed to report to her treatment providers that she was obtaining relief through a particular course of treatment (leg elevation). (AR at 35 ["During the hearing, the claimant testified that she elevates her legs (using a pillow under her legs and feet) once per day for a duration of approximately one hour while in a reclined position . . . [but] while the claimant was counseled to elevate her left leg at a medical evaluation on November 25, 2019 (5 days after her left knee arthroscopy and partial medial meniscectomy), there is no other reference to leg elevation (either as a recommended treatment modality or as self-reporting of her own activity to alleviate symptoms) in any of her subsequent longitudinal medical records. These inconsistencies undermine the persuasiveness of the claimant's impairment allegations."].)

In her opening brief, Plaintiff challenged this rationale as follows: "[Plaintiff] did not testify that a doctor told her she had to elevate her legs, it was just a position that she found relieved some pain for about an hour during the day. The ALJ's belief, that because a reference to leg elevation did not appear in the medical records [Plaintiff's] symptom testimony was invalid, is not a clear and convincing reason to reject [Plaintiff's] symptom testimony and is not supported by substantial evidence." (Doc. 21 at 21.) In response, the Commissioner argued that "[a] failure to report allegedly chronic issues to treatment providers can undermine those complaints." (Doc. 25 at 12-13.) Plaintiff did not further address this issue in her reply brief. (Doc. 26.) In the R&R, Judge Metcalf agrees with the Commissioner in relevant part, reasoning as follows: "The Commissioner fails to explain how the mere fact of self-help treatment is a clear and convincing reason to reject symptoms testimony. For example, the Commissioner does not suggest that Plaintiff had been advised against such activity, or that there was evidence it was ineffective. Such self-help is by itself indicative (rather than contraindicatory) of unresolved symptoms.

1 Engaging in the unprescribed leg elevating activity was not a clear and convincing reason to reject Plaintiff's symptoms testimony. *On the other hand, failing to report such activity and its salutary effects is incongruent with Plaintiff's claims of disabling pain. A patient who finds a means for self-relief (particularly one that is illicit) would reasonably be expected to report that to a physician providing her care for such pain.* Consequently, the undersigned concludes that the ALJ erred as to the leg elevating only as to the engagement in the activity." (Doc. 27 at 25, emphasis added.)

In her objections, Plaintiff makes only a passing reference to this analysis, arguing that the R&R "left unexplained" why the leg-raising evidence could be discrediting in some respects but not discrediting in others. (Doc. 28 at 6.) The Court disagrees. The R&R explains that, although the *fact* that Plaintiff engaged in leg-raising activity does not discredit her symptom testimony (and, if anything, tends to support the notion that she was suffering from pain that required alleviation), her *failure to report* such activity (and its beneficial effects) to her treatment providers is a credibility consideration that the ALJ could have permissibly taken into account, because it is the sort of thing that would normally be expected to be reported. Although the parties have not cited (and the Court has been unable to identify through its own research) any Ninth Circuit decision specifically addressing whether this sort of omission is a permissible basis for making an adverse credibility finding, the Court agrees with the R&R that it should be deemed permissible. For the same reasons that a claimant's failure to report symptoms to treatment providers can serve as a permissible basis for an adverse credibility finding, *see, e.g., Greger*, 464 F.3d at 972, a claimant's failure to report that she is experiencing relief from symptoms through a particular course of treatment can also be discrediting—such an omission may suggest that the claimant is not being straightforward with the treatment provider and is exaggerating her symptoms. Any contrary rule would erode the principle that, when "determin[ing] whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility

evaluation." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).[2]

B.     **RFC Determination**

The second assignment of error in Plaintiff's opening brief is that the ALJ "commit[ted] materially harmful error by failing to support the [RFC] determination with substantial evidence." (Doc. 21 at 1, 23-25.)

The R&R recommends that this challenge be rejected. (Doc. 27 at 27-31.) At the outset, the R&R explains: "It is true that the ALJ did not undertake a restriction-by-restriction explanation for the RFC. However, with several notable exceptions, the ALJ left a reasonably discernible path from his review of the evidence to his conclusions on the RFC." (*Id.* at 28.) More specifically, the R&R notes that the ALJ expressly considered Plaintiff's symptom testimony; expressly considered the findings and opinions of the state agency psychologists and state agency physicians; and ultimately adopted an RFC that "was more restrictive than that of these physicians." (*Id.* at 28-29.) Although the R&R faults the ALJ for not providing an adequate rationale for rejecting some of those physicians' opinions, it concludes that "[b]ecause the rejected portion of the physicians' opinions was unfavorable to Plaintiff, no harm resulted to Plaintiff." (*Id.* at 29-30.) The R&R also notes that "[i]t is tempting to pivot and rely on this lack of reasoning to attack the ALJ's reliance at all on the physicians' opinions (focusing on the half empty, rather than the half full portion of the glass)" but concludes that any such argument would fail for two independent reasons: (1) "an ALJ is not required to offer reasons for giving weight to a physician's opinion (at least in the absence of conflicting medical opinions)"; and (2) Plaintiff did not argue, in her opening brief, that it was error for the ALJ to rely on the opinions of the state agency physicians. (*Id.* at 30 & n.14.) The R&R thus concludes: "[I]n determining the RFC and thus ultimately finding no disability, the ALJ expressed reasons which were properly relied upon, including: (1) his rejection of portions of Plaintiff's

---

[2]     Alternatively, even if the ALJ erred in relying on such omissions as part of the credibility determination, any error was harmless in light of the ALJ's identification of multiple other clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony. *Molina*, 674 F.3d at 1115; *Carmickle*, 533 F.3d at 1162-63.

- 10 -

symptoms testimony; (2) the opinions of the state agency psychologists; (3) the opinions of the state agency physicians; and (4) a nonmedical source.  Thus Plaintiff fails to show an absence of reasons supported by substantial evidence.  To the extent some of the reasons were wholly or partially erroneous (e.g. the reliance on activities of daily living), the balance of the reasons renders such error harmless." (*Id.* at 31.)

In her objections, Plaintiff focuses on the R&R's analysis of the state agency physicians' opinions.  (Doc. 28 at 8-9.)  First, Plaintiff disputes the R&R's determination that she forfeited any "claim that that ALJ failed to provide sufficient reasons to rely on the state agency nonexamining opinions" by failing to raise such a claim in her opening brief.  (*Id.* at 8.)  Second, Plaintiff argues that under *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2002), an ALJ must make findings as to the consistency and supportability factors when evaluating the opinions of any medical source. (*Id.* at 9.)  In response, the Commissioner argues that the ALJ expressly considered those factors when evaluating the opinions of the state agency physicians, and indeed partially discounted their opinions on the basis of those factors.  (Doc. 29 at 8-9.)  More broadly, the Commissioner argues that "Plaintiff's objections do not overcome the ALJ's findings. . . .  Although Plaintiff argues that ALJ's RFC finding was not based on relevant substantial evidence, she does not dispute that the ALJ balanced the longitudinal evidence with Drs. Schnute's and Dow's opinions.  Nor does Plaintiff confront how the RFC matched opinions on Plaintiff's mental functioning that the ALJ found were 'generally consistent' with the medical evidence.  As discussed, the medical opinions, the objective evidence, and Plaintiff's course of treatment were relevant substantial evidence for the ALJ's RFC finding.  The ALJ's extensive analysis of the evidence (including the opinions) provides the Court with ample reasoning to determine that the ALJ's conclusions were supported by substantial evidence.  Furthermore, Plaintiff has not shown how any deviation from the opinion evidence was harmful. . . .  The ALJ did not err by moderating medical opinions to Plaintiff's benefit.  His adjusting of the opinions was based on substantial evidence and clearly outlined vocational terms." (*Id.* at 9-10.)

The Court agrees with the Commissioner on these points and agrees with the R&R's conclusion that Plaintiff's second assignment of error should be rejected. *Cf. Petty v. Colvin*, 2014 WL 1116992, *17 (D. Ariz. 2014) ("Although the ALJ found Plaintiff more limited than an examining doctor's assessment of her limitations, Plaintiff has not cited any authority indicating that an ALJ cannot moderate 'the full adverse force of a medical opinion' in a manner that is more favorable to a claimant.") (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

Accordingly,

**IT IS ORDERED** that:

(1) Plaintiff's objections to the R&R (Doc. 28) are **overruled**.

(2) The R&R (Doc. 27) is **adopted**.

(3) The decision of the ALJ is **affirmed**.

(4) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 7th day of March, 2023.

Dominic W. Lanza
United States District Judge